STACEY BOSSHARDT
DC Bar No. 458645
(*Pro Hac Vice application pending*)
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202.654.6200
SBosshardt@perkinscoie.com

ERIC B. FJELSTAD
JAMES N. LEIK
PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
Telephone: 907.279.8561
EFjelstad@perkinscoie.com
JLeik@perkinscoie.com

***Attorneys for Ambler Metals LLC,***
***Proposed Intervenor-Defendant***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHERN ALASKA ENVIRONMENTAL CENTER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID BERNHARDT, in his official capacity as Secretary of the Interior, et al.,<br><br>Defendants. | Case No. 3:20-cv-00187-SLG |

**AMBLER METALS LLC'S UNOPPOSED MOTION TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24, AND MEMORANDUM IN SUPPORT**

In this case, multiple organizations challenge the actions of the defendant federal agencies with respect to a proposal to create a new road in north-central Alaska that would connect the Ambler Mining District with the Dalton Highway ("Ambler Road Project" or "Project"). Ambler Metals LLC ("Ambler Metals") moves to intervene in this case by right, or in the alternative permissively, to support the actions taken by Defendants[1] in connection with the Project, and to protect Ambler Metals' interests in this litigation. *See* FED. R. CIV. P. 24.

## I. INTRODUCTION

Ambler Metals holds protectable interests, including mining claims it owns, that relate directly to Plaintiffs' claims and would be significantly impaired by the declaratory and injunctive relief Plaintiffs seek. In addition, Ambler Metals' defenses to Plaintiffs' claims raise questions of fact or law in common with the main action against the Defendants. For both reasons, the Court should grant Amber Metals' motion to intervene.

This motion is supported by the Declaration of Ambler Metals President and CEO Ramzi Fawaz, which is attached to this motion. Exhibit ("Ex.") A, Declaration ("Decl.") of Ramzi Fawaz dated Nov. 13, 2020. Ambler Metals has also lodged a proposed Answer concurrently with this motion, as required by Rule 24(c), and a proposed order.

[1] Plaintiffs sue Defendants U.S. Department of the Interior, the Bureau of Land Management, the U.S. Army Corps of Engineers, the National Park Service, and the U.S. Coast Guard, in addition to naming individual officers of those agencies who are sued in their official capacities.

Ex. B, Def.-Intervenor's Proposed Answer; Proposed Order. If granted intervention, Ambler Metals is willing to coordinate with Defendants and any other parties that may intervene to avoid duplicative arguments. Undersigned counsel has conferred with counsel for Plaintiffs and Defendants. Federal Defendants take no position on the motion. Intervenor-Defendant has agreed to certain case-management conditions requested by Plaintiffs, and as a result, Plaintiffs do not oppose this motion.

## II. BACKGROUND AND PROCEDURAL POSTURE

Ambler Metals is an independently operated company owned equally by Trilogy Metals, Inc. and South32 Limited. Ex. A, Decl. ¶ 3. It owns, or has access to, mining claims located in the Ambler Mining District, within the Northwest Arctic Borough. These claims contain mineralized belts with at least two known sizable mineral deposits, the Arctic deposit and the Bornite deposit. *Id*. The Arctic deposit is a sulfide deposit that lies approximately 292 miles northwest of the Fairbanks. *Id*. The Bornite deposit is a carbonate hosted copper deposit located approximately 16 miles southwest of the Company's Arctic project. *Id*. Both sites boast high-grade copper deposits with significant exploration potential.

Surface transportation access connecting the District with the Dalton Highway is necessary for Ambler to develop the Arctic project. Ex. A, Decl. ¶ 21. The Alaska Industrial Development and Export Authority ("AIDEA"), a corporation of the State of Alaska whose mission is to promote, develop and advance economic growth and diversification in Alaska, intends to construct a gravel road to support exploration and mining activities by Ambler Metals and other mining companies. Ex. C, Final EIS ES-1.

The road, which will not generally be open to the public, will be built in three stages and will be reclaimed after the expiration of the right of way in 50 years. *Id.* Because parts of the 211-mile road will cross federal lands or areas over which the agencies have permitting authority, AIDEA must apply for rights of way and permits from certain federal agencies.

Plaintiffs' Amended Complaint names five federal agencies or sub-agencies as defendants. Plaintiffs claim under the Alaska National Interest Lands Conservation Act, National Environmental Policy Act ("NEPA"), the Clean Water Act, and the Federal Land Management and Policy Act. Plaintiffs challenge the March 2020 EIS; the July 2020 Ambler Road Record of Decision ("JROD") issued jointly by the Bureau of Land Management and the U.S. Army Corps of Engineers; and the July 2020 National Record of Decision ("ROD") issued jointly by the Secretaries of the Interior and Transportation on Alignment of the Ambler Road through the Kobuk Preserve. Am. Compl. ¶ 7 (ECF 9). The relief sought in Plaintiffs' Complaint—invalidation of these agency actions and an injunction against the Project—could delay or jeopardize Ambler Metals' plans to pursue its mining claims. Because such relief would impair its interests, Ambler Metals moves for intervention as of right or, alternatively, permissive intervention.

Defendants answered the amended complaint on October 13. ECF 11. The next deadline, under this Court's scheduling order (ECF 13) and Local Rules 16.1(a)(8) and 16.3, barring any changes proposed by the parties, is that the administrative record shall be lodged by December 15, 2020. L. CIV. R. 16.3(b). Plaintiffs' opening brief is then due on January 14, 2021, assuming there is no briefing on the contents of the administrative

record and that the parties do not otherwise seek to modify the scheduling order. L. CIV. R. 16.3(c)(1).

## III. ARGUMENT

### A. Ambler Metals Should Be Granted Intervention as of Right

Intervention as of right is governed by Rule 24(a) of the Federal Rules of Civil Procedure, which provides:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2). A party seeking to intervene under Rule 24(a)(2) must: (1) make a timely application to intervene; (2) possess a "significantly protectable" interest relating to the subject of the litigation; (3) be situated such that its interest may be impaired or impeded by disposition of the action; and (4) have an interest that is not adequately represented by an existing party in the lawsuit. *Sw. Ctr. For Biolog. Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001).

In the Ninth Circuit, Rule 24(a)(2) is construed "broadly in favor of proposed intervenors." *Wilderness Soc'y. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (quoting *United States v. City of Los Angele*s, 288 F.3d 391, 397 (9th Cir. 2002)). A district court's analysis is "guided primarily by practical considerations" and not "technical distinctions." *Berg*, 268 F.3d at 818 (internal quotation marks and citation omitted). Here, Ambler Metals satisfies all threshold requirements.

### 1. Ambler Metals' Motion to Intervene is Timely.

To determine whether a motion to intervene is timely, a court considers: (1) the stage of the proceeding; (2) any prejudice to other parties; and (3) the reason for and length of the delay. *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002).

Ambler Metals' intervention is timely. Plaintiffs filed their amended complaint on August 13, 2020 (ECF 9), and Defendants answered on October 13 (ECF 11). The administrative record has not yet been lodged, no dispositive motions have been filed, and Defendants' opposition summary judgment brief will be due no earlier than February 15, 2021 under this Court's scheduling order and local rules governing the disposition of APA cases absent a motion by the parties to deviate from that schedule. *See* L. Civ. R. 16(c)(1) & (2); Admin. Appeal Scheduling Order dated Oct. 16, 2020, ECF 13. Under these circumstances, intervention will neither prejudice any of the parties nor disrupt the orderly and timely determination of the issues in this case.

Moreover, Ambler Metals is prepared to meet the Court's briefing and scheduling requirements, coordinate with the federal defendants to avert duplicative briefing, and otherwise structure its participation so that the litigation proceeds in orderly fashion and intervention does not complicate case management.

### 2. Ambler Metals has a Significantly Protectable Interest Related to the Ambler Road Project.

Ambler Metals' mining claims are a protectable interest within the meaning of the Rule. In *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993), *aff'd sub nom.*

*Greene v. Babbitt*, 64 F.3d 1266 (9th Cir. 1995), the Ninth Circuit held that "[w]hether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry." Addressing the type of interest needed to qualify for intervention, the Court found that no "specific legal or equitable interest need be established . . ."; an applicant must only demonstrate some "significantly protectable interest." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (internal quotation marks and citations omitted). No unique considerations exist when a non-party seeks to intervene in a case raising a claim under NEPA; "the operative inquiry should be, as in all cases, whether 'the interest is protectable under some law,' and whether 'there is a relationship between the legally protected interest and the claims at issue.'" *Wilderness Soc'y*, 630 F.3d 1173, 1180 (quoting *Sierra Club v U.S. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993).

Ambler Metals has significant protectable interests directly implicated by Plaintiffs' claims. Based on a recent Trilogy feasibility study, the Arctic deposit alone holds 1.9 billion pounds of copper. Ex. A, Decl. ¶ 9. Ambler Metals' patented mining claims, or contractual access to them, are protected under federal law. *United States v. Shumway*, 199 F.3d 1093, 1099–1100 (9th Cir. 1999) ("In law, the word 'claim' in connection with the phrase "mining claim" represents a federally recognized right in real property."); *see also Chilkat Indian Vill. of Klukwan v. Bureau of Land Mgmt.,* No. 3:17-CV-00253-TMB, 2018 WL 9854668, at *3 (D. Alaska May 24, 2018) (finding that federal mining claims and leases to explore these claims are legally protected interests). Indeed, it spent $30.6 million to procure mineral title to these claims. Ex. A, Decl. ¶ 11. But its ability to realize value from these claims depends on the existence of an industrial

road to transport the minerals. As acknowledged in the purpose and need statement for the Ambler Road EIS, the road "would provide surface transportation access to the District and allow for expanded exploration, mine development, and mine operations at mineral prospects throughout the [Ambler Mineral] District." Ex. C, Final EIS ES-3. Indeed, Plaintiffs' Amended Complaint relies heavily on the relationship between construction of the road and development of mineral resources in the Ambler Mining District, Am. Compl. ¶¶ 51, 54, 178, and two of the four deposits identified in the complaint (Arctic and Bornite) are owned by Ambler Metals. *Id.* ¶¶ 49, 50.

Moreover, the relief Plaintiffs seek threatens Ambler Metals' substantial investment of time and money in the Mining District. Ambler Metals and its predecessor, Trilogy, have been working to characterize the deposits since 2004. Ex. A, Decl. ¶ 11. In the past three years alone, Ambler Metals (through its parent companies) has spent $31 million on drilling and exploration. *Id.* ¶ 14. In all, Ambler and its parent companies have invested $290.9 million in the joint venture. *Id.* ¶ 16. Ambler Metals has committed to contributing up to $35 million towards construction of Ambler Road, starting with an immediate $500,000 in matching funds for predevelopment work. *Id.* ¶¶ 17, 18. If the Court grants the injunctive relief sought by Plaintiffs, the company's investment, and its ability to obtain any return on that investment, will be severely impacted. Delay in implementation caused by an injunction would result in tangible harm to Ambler Metals and other entities that would benefit from the mine's operations and jobs. *Id.* ¶¶ 7, 26. Given these potential harms to Ambler Metals, intervention in the

litigation is warranted, and the company should be allowed to participate fully in order to protect its significant property interests.

### 3. Ambler's Interests May be Impaired or Impeded by Disposition of Plaintiffs' Claims.

Whether the disposition of the action may impede or impair the applicant-intervenor's interests turns on a practical inquiry: "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Berg*, 268 F.3d at 822 (quoting FED R. CIV. P. 24, Advisory Committee's notes).

Here, the practical effect on Ambler Metals of the relief Plaintiffs seek is clear. The Complaint asks this Court to order that Defendants "[v]acate and set aside as unlawful any and all agency approvals and underlying analysis documents, including but not limited to the final EIS, JROD, 404 Permit, NPS Decision, and any authorizations stemming from these documents" (Am. Complaint, Prayer for Relief ¶ 2), as well as an injunction prohibiting "Defendants from allowing, authorizing, or approving any action" in reliance on those documents. *Id.*, Prayer for Relief ¶ 3. The requested relief, if granted, would at a minimum delay Ambler Metals' ability to recover value on its investment. Such a delay would prove extremely costly to the project, as discussed above, and threaten the continued viability of the company's investment in those sites as well as the economic benefits from the mine that would accrue to NANA through its option agreement with Ambler Metals.

### 4. Ambler Metals' Interests Are Not Adequately Represented by the Existing Parties to the Litigation.

A prospective intervenor bears the burden of showing that its interests may not be adequately represented by the existing parties, but that burden is "'minimal.'" *Berg*, 268 F.3d at 822–23 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). "[T]he applicant need only show that representation of its interests by existing parties 'may be' inadequate." *Id.* Any doubt regarding the adequacy of representation should be resolved in favor of the would-be intervenor. *See* 6 Moore's Federal Practice § 24.03[4][a][i].

In evaluating the adequacy of an existing party to represent the applicant-intervenor, courts consider whether the interest of a present party is such that it will "undoubtedly" make all the intervenor's arguments; whether a present party is capable and willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498–99 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173.

No existing party in this case adequately represents Ambler Metals' interests. Although the Defendants presumably share Ambler Metals' interest in upholding their decisions to authorize various portions of the Project, that mutual litigation goal does not guarantee that the agencies will zealously represent Ambler Metals' interests. Instead, as courts have recognized, the "Defendant Department of the Interior 'is a dual-mission agency, charged with both protecting the nation's natural resources and developing those

same resources . . . .'" *Alaska v. Jewell*, No. 3:14-cv-00048-SLG, 2014 WL 12521321, at *4 (D. Alaska June 10, 2014). *See also Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'") (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)); *Forest Conservation Council*, 66 F.3d at 1499 ("Inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public."); *Dep't of Fish & Game v. Fed. Subsistence Bd.*, No. 3:20-cv-00195-SLG, 2020 WL 5520560, at *1 (D. Alaska Sept. 14, 2020) (granting intervention where movant's interest, although aligned with those of defendants, "remain separate and distinct enough that Defendants will not 'undoubtedly make all of a proposed intervenor's arguments'").

As the permit issuing bodies, the federal Defendants are no doubt motivated to defend the integrity of the permitting process and in representing the broad public interest. *Forest Conservation Council*, 66 F.3d at 1499. In contrast, Ambler Metals' separate and distinct interest is to pursue its business opportunities and recover its investment in these claims. *Id.* The Ninth Circuit has determined that the government cannot adequately represent the "local and individual interests" of private parties in such circumstances. *Id.* *Accord Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 748 (7th Cir. 2020) (reversing denial of intervention based on divergence of interests between utility commission and transmission line applicants who "own, finance, and will

operate" line; "have obligations to their investors in connection with its construction and operation"; and have "substantial sunk and anticipated future investments in the power line, and a valid expectation of a return on their investment."). The costs of delay, and the extent to which an injunction would jeopardize Ambler Metals' cash flows, do not directly concern the federal agencies.

If permitted to intervene, Ambler Metals will furnish the Court with a unique, indispensable perspective not otherwise represented by the parties to this case. *See Sierra Club*, 995 F.2d at 1483 (allowing intervention of right to permit holder and explaining: "the adversary process can function only if both sides are heard"). The company, which has the best information concerning its claims and the most up to date information concerning its plans to mine Arctic and Bornite, and how many jobs are likely to be created as a result, will also likely "bring[] to the court's attention valuable information not available to or provided by [existing] parties." *Forest Conservation Council*, 66 F.3d at 1497 n.9. Granting intervention to Ambler Metals will provide the Court with the full spectrum of perspectives on certain issues and claims that will aid in their resolution.

Under the facts present here, Ambler Metals has made far more than the "minimal showing" Rule 24(a) requires that its protectable interests may not be adequately represented by the existing defendants.

### B. Alternatively, Ambler Metals Should be Granted Permissive Intervention.

When a timely application is made under Rule 24(b), the rule authorizes granting intervention to anyone who "has a claim or defense that shares with the main action a

common question of law or fact." FED. R. CIV. P. 24(b). Under Rule 24(b)'s standard, it is not necessary for the intervenor to demonstrate a direct interest in the subject matter or inadequate representation by the existing parties. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002). The existence of a common question of fact is "liberally construed." *Washington v. U.S. EPA*, No. 2:19-CV-00884-RAJ, 2020 WL 1955554, at *4 (W.D. Wash. Apr. 23, 2020). Where the requirements of Rule 24(a) are met, a court *must* allow intervention; where the requirements of Rule 24(b) are met, it *may* do so.

Ambler Metals meets the criteria for permissive intervention. The company's motion to intervene is timely at this early stage of the litigation, and its participation will not unduly delay the action or unfairly prejudice existing parties. *See, e.g., Kootenai Tribe of Idaho*, 313 F.3d at 1111 & n.10 (granting intervention where "motions were filed near the case outset and the defendant-intervenors said they could abide the court's briefing and procedural scheduling orders."). Ambler Metals shares common issues of law and fact with the defenses that will be raised by federal Defendants. *See* Ex. B, Def.-Intervenor's Proposed Answer; *Eyak Pres. Council v. U.S. Forest Serv.*, No. A03-180CV (JWS), 2003 WL 24085349, at *2 (D. Alaska Dec. 9, 2003) (finding applicant-intervenor's assertion that federal agency complied with NEPA "raise[d] questions of fact and law which are common to the defenses raised by the [federal defendant]"). Under permissive intervention criteria, this Court may allow Ambler Metals to fully participate in the litigation. *Kootenai Tribe of Idaho*, 313 F.3d at 1108–11, *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173; *Conservation Nw. v. Rey*, No. C08-1067-

JCC, 2008 WL 11344657, at *2 (W.D. Wash. Oct. 16, 2008) (economic interest supported permissive intervention in NEPA claim).

## IV. CONCLUSION

Ambler Metals has satisfied the criteria for intervention under either Rule 24(a) or 24(b). Its singular interest in the mineral development that Plaintiffs assert was not adequately analyzed by the defendant federal agencies is not only a "significantly protectable interest," but one that will contribute helpful context to the litigation. The company's superior knowledge of the Mining District, the resources it contains, and the plans for its exploration and development, will ensure that the Court has any information relevant to the proceedings that could assist the Court's resolution of disputed issues. Its motion should be granted.

Dated: November 17, 2020

**PERKINS COIE LLP**
***Attorneys for Proposed Intervenor-Defendant***

By: *s/ Stacey Bosshardt*
Stacey Bosshardt
DC Bar No. 458645
(*Pro Hac Vice application pending*)
SBosshardt@perkinscoie.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202.654.6200
Facsimile: 202.654.6211

Eric B. Fjelstad
EFjelstad@perkinscoie.com
James N. Leik
JLeik@perkinscoie.com
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
Telephone: 907.279.8561

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2020, a copy of the foregoing was served by electronic means on all counsel of record by the Court's DM/ECF system.

Dated: November 17, 2020

By: *s/ Stacey Bosshardt*
Stacey Bosshardt