Kyle W. Parker, ABA No. 9212124
David J. Mayberry, ABA No. 9611062
HOLLAND & HART LLP
1029 W. 3rd Avenue, Suite 550
Anchorage, Alaska 99501
Telephone:    (907) 865-2600
Facsimile:    (907) 865-2680
kwparker@hollandhart.com
djmayberry@hollandhart.com

*Attorneys for Alaska Industrial Development
and Export Authority*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

NORTHERN ALASKA ENVIRONMENTAL )
CENTER, ALASKA COMMUNITY ACTION )
ON TOXICS, ALASKA WILDLIFE )
ALLIANCE, ALASKANS FOR WILDLIFE, ) Case No. 3:20-cv-00187-SLG
CENTER FOR BIOLOGICAL DIVERSITY, )
EARTHWORKS, NATIONAL AUDUBON )
SOCIETY, NATIONAL PARKS )
CONSERVATION ASSOCIATION, SIERRA ) **AIDEA'S MOTION TO INTERVENE**
CLUB, THE WILDERNESS SOCIETY, and )
WINTER WILDANDS ALLIANCE, )
)
Plaintiffs, )
)
vs. )
)
DAVID BERNHARDT, in his official capacity )
as Secretary of the Interior, ROBERT )
WALLACE, in his official capacity as Assistant )
Secretary for Fish and Wildlife and Parks, )
CASEY HAMMOND, in his official capacity as )
Principal Deputy Assistant Secretary Exercising )
the Authority of the Assistant Secretary, Land )
and Minerals Management, CHAD PADGETT, )
in his official capacity as State Director for the )
Bureau of Land Management Alaska, DAVID )
HOBBIE in his official capacity as Regional )
Regulatory Chief of the Army Corps of )
Engineers-Alaska District, UNITED STATES )
DEPARTMENT OF THE INTERIOR, )
BUREAU OF LAND MANAGEMENT, )

| UNITED STATES ARMY CORPS OF | ) |
| ENGINEERS, NATIONAL PARK SERVICE, | ) |
| and UNITED STATES COAST GUARD, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Alaska Industrial Development Authority ("AIDEA") hereby moves to intervene in this action pursuant to Federal Rules of Civil Procedure 24(a) and 24(b). For the reasons discussed below, AIDEA should be granted leave to intervene as of right or, in the alternative, in the Court's discretion.

Counsel for AIDEA has contacted Plaintiffs' counsel and counsel for the Defendants regarding this intervention. Counsel for the Defendants indicated that the Defendants take no position on AIDEA's motion. Counsel for Plaintiffs needed to consult with her clients and co-counsel and anticipated making a written response to AIDEA's motion.

## BACKGROUND

### A.     AIDEA

AIDEA is a public corporation of the State of Alaska, constituting a political subdivision under the laws of the State. Declaration of Mark Davis ("Davis Decl.") at ¶ 2. AIDEA was created in 1967 by the Alaska Legislature to "promote, develop and advance the general prosperity and economic welfare of the people of Alaska, to relieve problems of unemployment, and to create additional employment." *Id.*

AIDEA accomplishes this through its development project finance programs. Davis Decl. at ¶ 2. Development finance is the effort of the State to support, encourage and catalyze enterprise growth. *Id.* It is a tool to help make a project successful, and in turn, to create a

benefit for the long-term economic health of the State and its citizens. *Id.* Development finance is a proactive approach towards finance intended to assist enterprise economic development projects; it leverages valuable public resources to support significant private sector investment. *Id.*

## B. Ambler Access Project

The Ambler Mining District is located within the Northwest Arctic Borough, in the southern foothills of the Brooks Range of north-central Alaska. Davis Decl. at ¶ 10. The District has extensive mineral resources, including copper, silver, gold, lead and zinc. *Id.* It has been characterized as one of the largest undeveloped copper-zinc mineral belts in the world. The area has been explored for decades, but development of the mineral resources has been limited due to a lack of transportation infrastructure. *Id.* AIDEA's Ambler Mining District Industrial Access Project ("Ambler Access Project") will be an all-season industrial access road running approximately 200 miles west from the Dalton Highway to the Ambler Mining District. *Id.* at ¶ 11. Once complete, the Ambler Access Project will provide surface transportation access to the Ambler Mining District, which access will be restricted to authorized industrial users, and enable further exploration and development of the area's resources, providing critical economic development opportunities for local residents, as well as Alaskans, generally. *Id.* at ¶ 10.

The start of the Ambler road will be on public lands managed by the Department of Interior, Bureau of Land Management ("BLM") within the Dalton Highway Utility Corridor. Davis Decl. at ¶ 11. The road will extend across State-owned lands (61 percent), lands privately owned by Alaska Native corporations (15 percent) (land use agreements with private landowners along the ROW are required), and federal lands (24 percent) managed by the BLM and the

National Park Service ("NPS"). The Ambler Access Project includes bridges, material sites, maintenance stations, airstrips, and related infrastructure and utilities. *Id.* AIDEA plans to build the Project in phases, starting with a seasonal, single-lane, gravel pioneer road. *Id.* This road would later be upgraded to an all-season, single-lane gravel road and then possibly expanded to a 2-lane gravel road. *Id.* AIDEA anticipates the Project to have a life of approximately 50 years, based on an estimate of when mineral exploration and development in the District is anticipated to be completed. *Id.* AIDEA will remove the road and reclaim and restore the ROW upon cessation of mining activities in the District. *Id.*

AIDEA is pursuing the Ambler Access Project consistent with its mission to increase job opportunities and otherwise encourage the State's economic growth, including development of its natural resources. Davis Decl. at ¶ 12. Specifically, AIDEA's purpose for the Project is to support mineral resource exploration and development in the Ambler Mining District. *Id.* The Project will provide surface transportation access to the District and allow for expanded mineral exploration, mine development, and mine operations at mineral prospects throughout the District. *Id.* AIDEA believes that surface transportation access would help bring those high value mineral resource areas into production. *Id.* AIDEA anticipates multiple public benefits related to the Project, including direct employment for road construction and operation, indirect employment related to mining activities, revenues paid to local and state governments and Alaska Native corporations, and improved commercial and social access opportunities by providing services, including access to high-speed broadband e-Connectivity to the residents of rural Alaska communities in proximity to the Project. *Id.*

AIDEA undertook the Ambler Access Project with the goal of forming a public-private partnership to finance, construct, operate and maintain the facility. Davis Decl. at ¶ 13. The project design is modeled on AIDEA's successful DeLong Mountain Transportation System ("DMTS"), which includes an industrial access road from the Red Dog Mine to the DMTS port. *Id.* AIDEA worked with private industry to develop the DMTS industrial access road and the costs of road construction were paid back through tolls on road use. *Id.* In furtherance of this plan to work with private capital, AIDEA has entered into a Memorandum of Understanding ("MOU") with Ambler Metals, LLC, to split the pre-construction development costs for the Ambler Access Project.

## C.     Ambler Access Project Permit Process

AIDEA formally initiated its Ambler Access Project on November 24, 2015, when it filed a right-of-way ("ROW") application (Standard Form 299 [SF299]) with the BLM, NPS, the U.S. Army Corp of Engineers ("USACE"), U.S. Coast Guard ("USCG"), and the U.S. Federal Highway Administration ("FHWA") seeking approval for industrial surface transportation access to currently inaccessible mineral deposits in the Ambler Mining District. Davis Decl. at ¶ 7. AIDEA filed its initial application, as well as its supplement of June 20, 2016, in accordance with the provisions of Titles II and XI of the Alaska National Interest Lands Conservation Act ("ANILCA"), which specifically recognizes the mineral potential of the State of Alaska lands in the District and the need for transportation access to those lands. *Id.* On April 29, 2019, AIDEA submitted to the BLM an amendment to the SF299 ROW application, which addresses communications facilities associated with the proposed access road. *Id.*

AIDEA'S MOTION TO INTERVENE
*Northern Alaska Environmental Center v. Bernhardt,* Case No. 3:20-cv-00187-SLG
Page 5 of 22

Case 3:20-cv-00187-SLG   Document 19   Filed 11/17/20   Page 5 of 22

AIDEA's SF299 ROW application was accepted by BLM and the other relevant federal agencies, including the NPS, USACE, USCG and FHWA with an effective date of June 30, 2016. Davis Decl. at ¶ 8. The BLM is the lead agency preparing the Environmental Impact Statement ("EIS") pursuant to the National Environmental Policy Act ("NEPA"), along with NPS taking lead on the Environmental and Economic Analysis ("EEA") per ANILCA Section 201(4)(d). *Id.*

Access to the Ambler Mining District through a surface transportation route from the Ambler Mining District to the Dalton Highway is established in ANILCA. Davis Decl. at ¶ 9. ANILCA established ten new federal parks, preserves, and monuments throughout Alaska while guaranteeing certain rights of access for subsistence, hunting, fishing, recreational and other economic and social purposes, including ensuring access to and from resource development areas across conservation units within the State. *Id.* In balancing these interests, Congress recognized the mineral potential of and the specific need for access to the Ambler Mining District to ensure the economic and social needs of the people of Alaska are met. *Id.* Section 201(4) of ANILCA therefore provides a specific guarantee of access to the Ambler Mining District for these purposes and includes a Congressional finding that there is a need for access for a surface transportation route. *Id.*

The Ambler Access Project was initiated by the Alaska Department of Transportation and Public Facilities ("DOT&PF") in 2009 when it began to identify and evaluate various overland routes to the Amber Mining District. Davis Decl. at ¶ 14. In 2013, after issuing a series of reports assessing the feasibility of those routes, DOT&PF transferred the Project to AIDEA. *Id.* With DOT&PF's continued technical and engineering support, as well as that of various

AIDEA'S MOTION TO INTERVENE
*Northern Alaska Environmental Center v. Bernhardt,* Case No. 3:20-cv-00187-SLG
Page 6 of 22

Case 3:20-cv-00187-SLG   Document 19   Filed 11/17/20   Page 6 of 22

contractors, AIDEA finalized the Project SF299 ROW and related permit applications and, in 2016, it initiated the formal permitting, NEPA and EEA review processes with the relevant federal agencies. *Id.* As the project proponent, AIDEA also covered the costs of BLM's third-party contractor that coordinated the NEPA review and prepared the Ambler Road Final Environmental Impact Statement ("FEIS"). *Id.* In addition to funds received from the Legislature, AIDEA has also contributed its own funds to pay for costs associated with the FEIS. *Id.* To date, Mr. Davis estimates that AIDEA and DOT&PF have expended approximately $28 million advancing the Ambler Access Project. *Id.*

On February 28, 2017, BLM initiated its NEPA review of the Ambler Access Project. Davis Decl. at ¶ 15. The NPS and the Federal Highway Administration initiated their separate but parallel process for an EEA as directed by ANILCA Section 201(4)(d) for the road route through the Gates of the Arctic National Preserve shortly thereafter. *Id.* The scoping comment period closed on January 31, 2018 for both the BLM NEPA review and the NPS EEA. *Id.* BLM released its draft Environmental Impact Statement on August 23, 2019 ("DEIS"). *Id.* Following a protracted public comment period, BLM released its FEIS on March 27, 2020. *Id.*

The FEIS for the Project was prepared by the BLM, with the USACE, USCG, U.S. Environmental Protection Agency ("EPA"), Alatna Village Council, Allakaket Tribal Council, Hughes Traditional Council, Noorvik Native Community, Northwest Arctic Borough, and State of Alaska Department of Natural Resources ("ADNR") as cooperating agencies. Davis Decl. at ¶ 16. In addition, the NPS, Federal Highway Administration, and U.S. Fish and Wildlife Service ("USFWS") were participating agencies. *Id.* The findings in the FEIS were based on an open, collaborative, and robust process among scientists, resource specialists, and regulatory staff of

AIDEA'S MOTION TO INTERVENE
*Northern Alaska Environmental Center v. Bernhardt,* Case No. 3:20-cv-00187-SLG
Page 7 of 22

Case 3:20-cv-00187-SLG   Document 19   Filed 11/17/20   Page 7 of 22

the USACE, BLM, all other cooperating and participating agencies, and the participating public. *Id.* This process resulted in an FEIS that, consistent with NEPA, provides a detailed analysis of the environmental impacts of the Ambler Access Project and all reasonable alternatives, including the No Action Alternative, to inform and support the reviews and decisions of the BLM and USACE for the proposed Project. *Id.*

BLM and the USACE released their Joint Record of Decision ("ROD") for the Ambler Access Project on July 23, 2020. Davis Decl. at ¶ 17. The ROD was prepared in accordance with BLM's authority under Title V of the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1761–1772), and Sections 810, 201, and Title XI of ANILCA. *Id.* The ROD also contains the USACE's determination of compliance with the Section 404(b)(1) Guidelines, 40 C.F.R. § 230 ("Guidelines"), the public interest review, 33 C.F.R. § 320.4, and permit decision under the authority delegated to the District Engineer, 33 C.F.R. § 325.8, pursuant to Section 404 of the Clean Water Act and Section 10 of the Rivers and Harbors Act of 1899. *Id.* The ROD formalizes and records the agencies' mutual decision to select an alternative for the Project. *Id.* Project design features, as well as agency required mitigation measures and special conditions are also included. *Id.*

As a portion of the Ambler Access Project route goes through Gates of the Arctic National Park and Preserve ("Gates of the Arctic"), which is managed by the NPS, ANILCA directs the Secretary of the Interior and Secretary of Transportation to jointly prepare an EEA to determine the route through Gates of the Arctic, and the terms and conditions that may be required for issuance of the ROW permit by the Secretary. Davis Decl. at ¶ 18. The EEA and a related route selection decision were issued concurrently with this ROD. *Id.*

AIDEA'S MOTION TO INTERVENE
*Northern Alaska Environmental Center v. Bernhardt,* Case No. 3:20-cv-00187-SLG
Page 8 of 22

Case 3:20-cv-00187-SLG Document 19 Filed 11/17/20 Page 8 of 22

The FEIS, ROD and EEA authorizing development of AIDEA's Ambler Access Project are the subjects of the First Amended Complaint filed in this matter. Davis Decl. at ¶ 19. In this action, the Plaintiffs seek to vacate and set aside all agency approvals and underlying analysis documents, including the FEIS, ROD, EAA, USACE 404 Permit and any other authorizations stemming from those documents. *Id.* at 20. The opportunity for economic growth and development in Alaska, generally, and the rural communities of western Alaska, specifically, is a fundamental consideration upon which AIDEA has based its investment in the Ambler Access Project. *Id.* In undertaking this Project, AIDEA has relied upon the declared public policy and laws of United States (ANILCA) and Alaska, which encourage and permit development of the Ambler Mining District. *Id.* AIDEA has expended significant sums of money evaluating the Project, completing required environmental assessments and preparing required permit applications. *Id.* If Plaintiffs' requested relief is granted, AIDEA's significant investment to date will be lost, and the future economic growth opportunities critical to the future of the people of the State of Alaska will be frustrated. *Id.*

## ARGUMENT

AIDEA meets the standard for intervention as of right set forth in Federal Rule of Civil Procedure 24(a). First, AIDEA's motion is timely filed, and AIDEA's intervention will not delay or impede resolution of this matter. Second, AIDEA has a substantial interest in the outcome of this litigation. AIDEA has invested millions of dollars in the Ambler Access Project. Third, Plaintiffs' lawsuit threatens AIDEA's substantial interests by seeking an order that would set aside the approvals necessary for AIDEA to pursue the Ambler Access Project. Fourth, AIDEA's interests are not adequately represented by any of the existing parties. The federal

government's obligation is to represent the interests of the general public, and this responsibility differs from that of AIDEA. AIDEA may wish to advance arguments or pursue strategies that would not be advanced or pursued by the federal government, and AIDEA will be able to contribute factual information that may not be readily accessible to the federal government. Finally, granting AIDEA intervention is consistent with Ninth Circuit precedent allowing parties to intervene in NEPA challenges where those parties have an existing legal right (*e.g.*, a contract, permit or lease) a plaintiff seeks to restrict.

Alternatively, the Court should exercise its discretion and grant AIDEA permissive intervention under Federal Rule 24(b). AIDEA's defenses and arguments have questions in common with Plaintiffs' action. In addition, AIDEA's intervention will not unduly delay or otherwise prejudice the adjudication of the rights of the original parties to this action.

For these reasons, discussed further below, AIDEA should be granted leave to intervene in this action. A proposed order granting the relief requested is attached.

## I.     AIDEA Should Be Granted Intervention As Of Right

Federal Rule 24(a)(2) provides that:

> [u]pon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Based on this rule, the Ninth Circuit has established a four-part test that a party must meet to intervene as a matter of right:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993).

The Ninth Circuit construes Federal Rule 24(a) liberally in favor of potential intervenors: "[i]n determining whether intervention is appropriate, we are guided primarily by practical and equitable considerations. We generally interpret the requirements broadly in favor of intervention." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *see also Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001); *Forest Conserv. Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995). A "district court is required to accept as true the non-conclusory allegations made in support of an intervention motion," including statements set forth in a complaint or answer in intervention. *Southwest Ctr. for Biological Diversity*, 268 F.3d at 819-20. Importantly, the Ninth Circuit abandoned its rule that only the federal government could be a defendant in NEPA cases, finding other stakeholders should be allowed to intervene as of right in the merits phase of a NEPA action so long as they could suffer some "practical impairment" from the action. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1181 (9th Cir. 2011).

As set forth below, AIDEA easily satisfies the Ninth Circuit's test for intervention. Therefore, AIDEA should be granted intervention as a matter of right.

**A.    AIDEA's Motion is Timely.**

The Ninth Circuit considers the following three factors when determining the timeliness of a motion to intervene:   "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Orange County v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986); *see also United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (articulating same test).

AIDEA's motion to intervene is timely because this request comes prior to any procedural and substantive briefing.  AIDEA will follow the deadlines and schedules set forth in any scheduling order issued by the Court.  As a result, AIDEA's request for intervention imposes no burden or prejudice on the existing parties, has been promptly filed, and should be deemed timely.  *See*, *e.g.*, *Greenpeace Found. v. Daley*, 122 F. Supp. 2d 1110, 1114 (D. Haw. 2000) (motion for intervention filed less than three months after lawsuit initiated was timely).

**B.    AIDEA Has A Significantly Protectable Interest In Defendants' Approvals.**

"Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry.  No specific legal or equitable interest need be established." *Forest Conserv. Council*, 66 F.3d at 1493 (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)).  The "significantly protectable interest" requirement is satisfied when an intervenor has "any existing legal right, contract, or permits" relating to the interest the plaintiff seeks to enjoin, as opposed to a bare expectation of an interest. *Southwest Ctr. for Biological Diversity*, 268 F.3d at 819.

The FEIS, ROD, EAA and USACE 404 Permit for the Amber Access Project are valid authorizations received by AIDEA. These authorizations and permits are "significantly protectable interest[s]" that entitle AIDEA to intervene. *Southwest Ctr. for Biological Diversity*, 268 F.3d at 819. AIDEA must have these authorizations and permits to pursue its Ambler Access Project.

A would-be intervenor must also establish a "relationship between the legally protected interest and the claims at issue." *Forest Conserv. Council*, 66 F.3d at 1494. This "relationship" is satisfied when, as here, "the injunctive relief sought by plaintiff will have direct, immediate, and harmful effects upon a third party's legally protected interests[.]" *Id*. at 1494, 1495 (state and county permitted to intervene because they had "tangible, concrete rights protected by various federal and state laws, as well as contracts with the federal government"); *see also Donnelly*, 159 F.3d at 410 (interest is "related" to the subject of the action when "the resolution of the plaintiff's claims actually will affect the applicant").

The relief sought by Plaintiffs would directly harm AIDEA. Plaintiffs ask this Court to essentially reverse and vacate each and every finding, authorization and permit issued by Defendants for the Ambler Access Project. For example, Plaintiffs pray for the Court to:

- "Declare that BLM's and the Corps' findings, analysis, conclusions, and decisions contained in the final EIS, JROD, and 404 Permit violated ANILCA, NEPA, the CWA, FLPMA, and the APA" and

- "Vacate and set aside as unlawful any and all agency approvals and underlying analysis documents, including but not limited to the final EIS, JROD, 404 Permit, NPS Decision, and any authorizations stemming from these documents" and

- "Enter appropriate injunctive relief, including enjoining the Defendants from allowing, authorizing, or approving any action in reliance on the JROD, 404 Permit, and NPS Decision . . . ."

Am. Compl. at 70. Plaintiffs' claims clearly jeopardize AIDEA's considerable efforts and investments in the Ambler Access Project. Invalidation of these environmental reviews, authorizations and permits as a result of Plaintiffs' claims would be seriously detrimental to AIDEA's Ambler Access Project. Accordingly, AIDEA has significantly protectable interests directly affected by Plaintiffs' claims.

### C. Disposition Of This Case Would Impair Or Impede AIDEA's Interests.

When determining whether a significantly protectable interest would be "impaired" or "impeded" by the disposition of a case, the Ninth Circuit follows the advisory committee notes to Federal Rule 24: "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Southwest Ctr. for Biological Diversity*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee's notes). In other words, a non-party should be allowed to participate in the litigation if it would otherwise "be unfair to decide the case and injure the non-party." *See* 6 Moore's Federal Practice § 24.03[3][a] at 24-37.

AIDEA is the beneficiary of the environmental reviews, authorizations and permits challenged by Plaintiffs. AIDEA has paid the BLM for its reimbursable costs in preparing the FEIS and ROD, as well as the costs of the third-party contractor retained by the BLM to assist the agency in the preparation of the FEIS and ROD. As set forth above, Plaintiffs seek

declaratory and injunctive relief that, at a minimum, will delay and disrupt AIDEA's Ambler Access Project. Even more directly, Plaintiffs are asking the Court to vacate the reviews, authorizations and permits granted AIDEA. Either remedy would impede AIDEA's protectable interests. These harms are sufficient to satisfy the practical impairment test required to intervene as a matter of right. *See*, *e.g.*, *Southwest Ctr. for Biological Diversity*, 268 F.3d at 822 (finding impairment when the invalidation of an existing agreement between City and federal government would "legally and practically affect" would-be intervenor's projects already under consideration for approval).

### D. The Existing Parties Do Not Adequately Represent AIDEA's Interests.

The showing that existing parties may not adequately represent a private party's interests "is not a strenuous test." *League of Wilderness Defenders v. Forsgren*, 184 F. Supp. 2d 1058, 1061 (D. Or. 2002). While the proposed intervenor bears the burden of demonstrating that his interests are not represented by the existing parties, "[t]he applicant-intervenor's burden in showing inadequate representation is minimal: it is sufficient to show that representation *may be* inadequate." *Forest Conserv. Council*, 66 F.3d at 1498 (emphasis in original); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

The Ninth Circuit considers the following factors when determining whether a would-be intervenor's interests will be adequately represented by an existing party:

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.

AIDEA'S MOTION TO INTERVENE
*Northern Alaska Environmental Center v. Bernhardt,* Case No. 3:20-cv-00187-SLG
Page 15 of 22

Case 3:20-cv-00187-SLG   Document 19   Filed 11/17/20   Page 15 of 22

*Southwest Ctr. for Biological Diversity*, 268 F.3d at 822 (citation omitted). Any doubt regarding the adequacy of representation should be resolved in favor of the would-be intervenor. *See* 6 Moore's Federal Practice § 24.03[4][a][i] at 24-42; Wright & Miller, § 1909 at 346.

The federal government is required to represent the public's broad overall interest. The federal government does not represent AIDEA or its unique interests as the project proponent, particularly as those interests relate to job creation and diversifying the State's economy, and if AIDEA is denied party status it will not be able to fully protect those important legal interests. Furthermore, the Government is not charged with representing any of AIDEA's economic interests in the approvals it has secured. For example, the Government's arguments presumably will be fashioned with an eye toward how its approach impacts national programs and interests. AIDEA's arguments in this litigation, however, will be framed by its interests in these specific approvals. The Defendants' representation of the public's general interest is sufficiently different from that of AIDEA that Defendants are unlikely to give each of AIDEA's unique interests sufficient attention. *See*, *e.g.*, *Forest Conserv. Council*, 66 F.3d at 1499; *see also* Wright & Miller, § 1909 at 319 (when a would-be intervenor's interest "is similar to, but not identical with, that of one of the [existing] parties," the applicant should be allowed to intervene). AIDEA's intervention will allow it to provide information and raise arguments that might otherwise "be ignored or overlooked" by both the Plaintiffs and the Defendants. 6 Moore's Federal Practice § 24.03[4][a] at 24-43. AIDEA is also likely to "bring[] to the court's attention valuable information not available to or provided by the [existing] parties." *Forest Conserv. Council*, 66 F.3d at 1497 n.9. For example, neither the Plaintiffs nor the federal Defendants have an interest in providing a revenue source for local government, creating local

hire in an area of substantial unemployment, or developing a project to enhance State of Alaska revenues during an economic downturn.

In similar challenges, the Ninth Circuit has held that "[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." *Forest Conserv. Council*, 66 F.3d at 1499 (quoting Moore's Federal Practice and finding "Forest Service may not adequately represent [intervenor's private] interests in defending against the issuance of a broad injunction"); *see also Southwest Ctr. for Biological Diversity*, 268 F.3d at 823-24 (finding federal government not expected to protect intervenor's uniquely private interests and unlikely to advance the same arguments); *League of Wilderness Defenders*, 184 F. Supp. 2d at 1061 (quoting same and finding timber company's personal interest in benefiting from existing contract fell outside of general public's interest). Therefore, "there is sufficient doubt about the adequacy of [the government's] representation to warrant intervention." *Trbovich*, 404 U.S. at 538.

Because AIDEA meets all four of the requirements for intervention as a matter of right, this Court should recognize AIDEA's right to intervene.

## II.     Alternatively, AIDEA Should be Allowed Permissive Intervention.

Under Rule 24(b), permissive intervention is entirely within this Court's discretion:

> when an applicant's claim or defense and the main action have a question of law or fact in common . . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b)(2). Regarding Federal Rule 24(b), the Ninth Circuit has observed:

> Unlike Rule 24(a), a "significant protectable interest" is not required by Rule 24(b) for intervention; all that is necessary for

> permissive intervention is that intervenor's "claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940).

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002); *see also* Wright & Miller, § 1911 at 357-63; 6 Moore's Federal Practice § 24.11 at 24-61. Permissive intervention should be granted liberally and is within the sound discretion of the Court. *See Kootenai Tribe*, 313 F.3d at 1110; Wright & Miller, § 1904 at 238.

AIDEA meets the standard for permissive intervention here. AIDEA seeks permissive intervention under Rule 24(b) to respond to the Plaintiffs' claims. Parties with economic interests at stake have routinely been allowed to intervene in administrative actions involving requests for an injunction. *See*, *e.g.*, *Wetlands Action Network v. U.S. Army Corps of Engn'rs*, 222 F.3d 1105, 1114 (9th Cir. 2000); *Churchill County v. Babbitt*, 150 F.3d 1072, 1081-83 (9th Cir. 1998), *as amended*, 158 F.3d 491 (9th Cir. 1998); *Forest Conserv. Council*, 66 F.3d at 1497 n.9; *League of Wilderness Defenders*, 184 F. Supp. 2d at 1061-62.

For these reasons, courts (including the Ninth Circuit) have allowed intervenors to participate in the merits of NEPA and other administrative appeal cases. *See*, *e.g.*, *Douglas County v. Babbitt*, 48 F.3d 1495, 1497, 1499 (9th Cir. 1995) (parties intervened in NEPA and ESA and challenged the designation of certain federal land as critical habitat for the Northern Spotted Owl; defendant-intervenors allowed to argue merits of NEPA issues); *Sierra Club v. Dombeck*, 161 F. Supp. 2d 1052, 1069 (D. Ariz. 2001) (party intervened in an action that involved NEPA and FLPMA claims, party permitted "to intervene in this matter and participate

AIDEA'S MOTION TO INTERVENE
*Northern Alaska Environmental Center v. Bernhardt,* Case No. 3:20-cv-00187-SLG
Page 18 of 22

Case 3:20-cv-00187-SLG   Document 19   Filed 11/17/20   Page 18 of 22

in all aspects of the litigation"); *Kettle Range Conserv. Group v. U.S. Forest Serv.*, 148 F. Supp.

2d at 1107, 1111, 1130 (E.D. Wash. 2001) (lumber company intervenors submitted a motion for

summary judgment that addressed substantive NEPA issues, including cumulative impacts);

*Resources Ltd., Inc. v. Robertson*, 789 F. Supp. 1529, 1533, 1539 (D. Mont. 1991) (association

representing major purchasers of timber were allowed to intervene on NEPA issues and given

opportunity to argue NEPA issues on the merits). And while AIDEA may be a public

corporation owned by the State of Alaska, in the context of this case the shoes it stands in are no

different from those of a private party benefiting from government approvals.

### A. AIDEA's Motion is Timely.

For all the reasons set forth in Section I.A. of the Argument above, AIDEA's motion

should be deemed timely.

### B. AIDEA's Claims or Defenses Have Questions of Law And Fact In Common With The Main Action.

A would-be intervenor meets the requirement of common questions of law and fact when

the intervenor asserts (i) an interest in the lands and property subject to the government decision-

making, (ii) defenses of the government's decision-making that are directly responsive to a claim

for an injunction, or (iii) defenses of the government's decision-making "that squarely respond to

the challenges made by plaintiff in the main action." *Kootenai Tribe*, 313 F.3d at 1110-11.

AIDEA's request for intervention shares common questions of law and fact with the

underlying action. AIDEA's significant interests in protecting the approvals which allow

AIDEA to pursue the Ambler Access Project weigh in favor of intervention on all aspects of

Plaintiffs' claims. In *Kootenai Tribe*, the Ninth Circuit found that intervenors with interests in

the outcome of the case more tangential than AIDEA's interests here could intervene to defend the government's NEPA compliance when it promulgated regulations. *Kootenai Tribe*, 313 F.3d at 1111 (finding "large and varied interests" raised by NEPA claims were a "good and substantial reason" to allow permissive intervention by private organizations enjoying federal roadless lands). Here, AIDEA's interests are plainly directly related to the Defendants' compliance with NEPA and other federal laws and are more concrete than those raised by the intervenors in *Kootenai Tribe*.

Regarding Plaintiffs' request for injunctive relief, AIDEA has important interests in participating in the determination whether and what type of injunctive relief is appropriate. *League of Wilderness Defenders*, 184 F. Supp. 2d at 1061. AIDEA is in the best position to present the facts and circumstances related to the specific harm it would suffer from an injunction and therefore should be allowed to brief issues relating to whether and what type of injunction, if any, is appropriate. *See Id.* For that reason, private parties are permitted to intervene and brief issues relating to an injunction since part of the court's inquiry is to consider the harms to that party when it "balances the hardships." *See*, *e.g.*, *League of Wilderness Defenders*, 184 F. Supp. 2d at 1061-62. Under such circumstances, permissive intervention should be granted. *See*, *e.g.*, *Forest Conserv. Council*, 66 F.3d at 1496, 1498; *Greenpeace Found.*, 122 F. Supp. 2d at 1115.

### C. AIDEA's Intervention Will Not Unduly Delay The Main Action Or Unfairly Prejudice The Existing Parties.

AIDEA's intervention will not delay this litigation or prejudice the existing parties. This Court's scheduling order will impose on AIDEA the very same schedule imposed on the

Plaintiffs and current Defendants. As such, granting AIDEA status as an intervening party will not delay or disrupt the Court's schedule or otherwise cause any prejudice to the existing parties. *See Kootenai Tribe*, 313 F.3d at 1131 n.10 (no issue of delay when a party's intervention motion filed near onset of litigation and defendant-intervenors agree to court's briefing and procedural scheduling orders).

## <u>CONCLUSION</u>

For all the foregoing reasons, AIDEA respectfully requests that the Court grant AIDEA leave to intervene in this case as a matter of right. Alternatively, at a minimum, the Court should exercise its discretion and allow AIDEA permissive intervention.

DATED at Anchorage, Alaska this 17th day of November 2020.

> HOLLAND & HART LLP
> Attorneys for Alaska Industrial Development
> and Export Authority
>
> /s/ Kyle W. Parker
> Kyle W. Parker, ABA No. 9212124
> David J. Mayberry, ABA No. 9611062
> HOLLAND & HART LLP
> 1029 W. 3rd Avenue, Suite 550
> Anchorage, Alaska 99501
> Telephone:    (907) 865-2600
> Facsimile:    (907) 865-2680
> kwparker@hollandhart.com
> djmayberry@hollandhart.com

AIDEA'S MOTION TO INTERVENE
*Northern Alaska Environmental Center v. Bernhardt,* Case No. 3:20-cv-00187-SLG
Page 21 of 22

Case 3:20-cv-00187-SLG   Document 19   Filed 11/17/20   Page 21 of 22

**CERTIFICATE OF SERVICE**

I hereby certify on November 17, 2020, I caused to be electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification and electronic service of

the same to all counsel of record.

HOLLAND & HART LLP

/s/ Kyle W. Parker

AIDEA'S MOTION TO INTERVENE
*Northern Alaska Environmental Center v. Bernhardt,* Case No. 3:20-cv-00187-SLG
Page 22 of 22

Case 3:20-cv-00187-SLG   Document 19   Filed 11/17/20   Page 22 of 22